**RECEIVED**

DEC 1 6 2004

**LEONARD GREEN, Clerk**

# Supreme Court of the United States
## Office of the Clerk
### Washington, DC 20543-0001

*00-1824/1845*

William K. Suter
Clerk of the Court
(202) 479-3011

December 13, 2004

Clerk
United States Court of Appeals for the Sixth Circuit
524 Potter Stewart Courthouse
100 East Fifth Street
Cincinnati, OH 45202

**00-10082**

Re:  John F. Kowalski, Judge, 26th Judicial Circuit Court of Michigan,
et al.
v. John C. Tesmer, et al.
No. 03-407
(Your No. 00-1824, 00-1845)

Dear Clerk:

The enclosed opinion of this Court was announced today in the above
stated case.

The judgment or mandate of this Court will not issue for at least
twenty-five days pursuant to Rule 45. Should a petition for rehearing be filed
timely, the judgment or mandate will be further stayed pending this Court's
action on the petition for rehearing.

Sincerely,

**William K. Suter**, Clerk

by

Denise McNerney
Merits Case Clerk
(202) 479-3032

(Bench Opinion)  OCTOBER TERM, 2004  00-1824/1845

1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.*, 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## KOWALSKI, JUDGE, 26TH JUDICIAL CIRCUIT COURT OF MICHIGAN, ET AL. *v.* TESMER ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 03–407.  Argued October 4, 2004—Decided December 13, 2004

After Michigan's Constitution was amended to require that an appeal by an accused pleading guilty or nolo contendere be by leave of the court, several state judges denied appointed appellate counsel to indigents pleading guilty, and the Michigan Legislature subsequently codified this practice. The two attorney respondents joined three indigent criminal defendants in filing suit in Federal District Court, alleging that the practice denies indigents their federal due process and equal protection rights. The District Court held the practice and statute unconstitutional, but a Sixth Circuit panel reversed, holding that *Younger* v. *Harris*, 401 U. S. 37, abstention barred the indigents' suit, but that the attorneys had third-party standing to assert the indigents' rights; and that the statute was constitutional. On rehearing, the en banc Sixth Circuit agreed on standing but found the statute unconstitutional.

*Held:* The attorneys lack third-party standing to assert the rights of Michigan indigent defendants denied appellate counsel. The Court assumes that the attorneys have satisfied Article III's standing requirement and thus addresses only whether they have standing to raise the rights of others. In deciding whether to grant third-party standing, this Court asks whether the party asserting the right has a "close" relationship with the person who possesses the right, and whether there is a "hindrance" to the possessor's ability to protect his own interests. *Powers* v. *Ohio*, 499 U. S. 400, 411. The attorneys here claim standing based on a future attorney-client relationship with as yet unascertained Michigan criminal defendants who will request, but be denied, appellate counsel under the statute. In two cases in which this Court found an attorney-client relationship suffi-

2                          KOWALSKI *v.* TESMER

Syllabus

cient to confer third-party standing—*Caplin & Drysdale, Chartered*
v. *United States,* 491 U. S. 617, and *Department of Labor* v. *Triplett,*
494 U. S. 715—the attorneys invoked known clients' rights, not those
of the *hypothetical* clients asserted here. And *Department of Labor* v.
*Triplett*—in which an attorney disciplined by his state bar for accept-
ing a fee prohibited by the Black Lung Benefits Act of 1972 was held
to have third-party standing to invoke claimants' due process rights
to challenge the fee restriction that resulted in his punishment—falls
within the class of cases allowing "standing to litigate the rights of
third parties when enforc[ing] the challenged restriction against the
litigant would result indirectly in the violation of third parties'
rights," *Warth* v. *Seldin,* 422 U. S. 490, 510. The attorneys here do
not have a "close relationship" with their alleged "clients"; indeed,
they have no relationship at all.   Nor have they demonstrated any
"hindrance" to the indigents' advancing their own constitutional
rights against the Michigan scheme. An indigent may seek leave to
challenge the denial of appellate counsel in state court and then may
seek a writ of certiorari in this Court; and both state and federal col-
lateral review exist beyond that.   The attorneys' hypothesis that,
without counsel, such avenues are effectively foreclosed was dis-
proved in the Michigan courts and this Court, where *pro se* indigents
have pursued them.   On a more fundamental level, if an attorney is
all that the indigents need to perfect their challenge in state court
and beyond, one wonders why these attorneys did not attend state
court and assist them. The fair inference is that they did not want
the state process to take its course, but wanted a federal court to
short-circuit the State's adjudication of the constitutional question.
Here, the indigents were appropriately dismissed under *Younger* be-
cause they had ample opportunities to raise their constitutional chal-
lenge in their ongoing state proceedings. An unwillingness to allow
the *Younger* principle to be thus circumvented is an additional reason
to deny the attorneys third-party standing. Pp. 2–8.

333 F. 3d 683, reversed and remanded.

REHNQUIST, C. J., delivered the opinion of the Court, in which
O'CONNOR, SCALIA, KENNEDY, THOMAS, and BREYER, JJ., joined. THOMAS,
J., filed a concurring opinion. GINSBURG, J., filed a dissenting opinion, in
which STEVENS and SOUTER, JJ., joined.

Cite as: 543 U. S. ____ (2004)          1

Opinion of the Court

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 03–407

## JOHN F. KOWALSKI, JUDGE, 26TH JUDICIAL CIRCUIT COURT OF MICHIGAN, ET AL., PETITIONERS v. JOHN C. TESMER ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[December 13, 2004]

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

This case involves a constitutional challenge to Michigan's procedure for appointing appellate counsel for indigent defendants who plead guilty. The only challengers before us are two attorneys who seek to invoke the rights of hypothetical indigents to challenge the procedure. We hold that the attorneys lack standing and therefore do not reach the question of the procedure's constitutionality.

In 1994, Michigan amended its Constitution to provide that "an appeal by an accused who pleads guilty or nolo contendere shall be by leave of the court" and not as of right. Mich. Const., Art. I, §20. Following this amendment, several Michigan state judges began to deny appointed appellate counsel to indigents who pleaded guilty, and the Michigan Legislature subsequently codified this practice.[1] See Mich. Comp. Laws Ann. §770.3a (West

---

[1] The statute limits appellate counsel for defendants who "plea[d] guilty, guilty but mentally ill, or nolo contendere." Mich. Comp. Laws Ann. §770.3a(1) (West 2000). For simplicity, we shall refer only to defendants who plead guilty, although our analysis applies to all three situations.

KOWALSKI *v.* TESMER

2000). Under the statute, which was scheduled to go into effect on April 1, 2000, appointment of appellate counsel for indigents who plead guilty is prohibited, with certain mandatory and permissive exceptions. *Ibid.*

A challenge to the Michigan practice was filed in the United States District Court for the Eastern District of Michigan. The named plaintiffs included the two attorney respondents and three indigents who were denied appellate counsel after pleading guilty. Pursuant to Rev. Stat. §1979, 42 U. S. C. §1983, they alleged that the Michigan practice and statute denied indigents their federal constitutional rights to due process and equal protection. They sought declaratory and injunctive relief against the practice and the statute.

A day before the statute was to take effect, the District Court issued an order holding the practice and statute unconstitutional. *Tesmer* v. *Granholm,* 114 F. Supp. 2d 603 (2000). It ultimately issued an injunction that bound all Michigan state judges, requiring them not to deny appellate counsel to any indigent who pleaded guilty. 114 F. Supp. 2d 622 (2000). A panel of the Court of Appeals for the Sixth Circuit reversed. *Tesmer* v. *Granholm,* 295 F. 3d 536 (2002). The panel held that *Younger* v. *Harris,* 401 U. S. 37 (1971), abstention barred the suit by the indigents but that the attorneys had third-party standing to assert the rights of indigents. It then held that the statute was constitutional. The Court of Appeals granted rehearing en banc and reversed. *Tesmer* v. *Granholm,* 333 F. 3d 683 (2003). The en banc majority agreed with the panel on standing but found that the statute was unconstitutional. Separate dissents were filed, challenging the application of third-party standing and the holding that the statute was unconstitutional. We granted certiorari. 540 U. S. 1148 (2004).

The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance. This

Opinion of the Court

inquiry involves "both constitutional limitations on fed-eral-court jurisdiction and prudential limitations on its exercise." *Warth* v. *Seldin*, 422 U. S. 490, 498 (1975). In this case, we do not focus on the constitutional minimum of standing, which flows from Article III's case-or-controversy requirement. See *Lujan* v. *Defenders of Wildlife*, 504 U. S. 555, 560 (1992). Instead, we shall assume the attorneys have satisfied Article III and address the alternative threshold question whether they have standing to raise the rights of others. See *Ruhrgas AG* v. *Marathon Oil Co.*, 526 U. S. 574, 585 (1999).[2]

We have adhered to the rule that a party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth* v. *Seldin, supra*, at 499. This rule assumes that the party with the right has the appropriate incentive to challenge (or not challenge) governmental action and to do so with the necessary zeal and appropri-ate presentation. See 422 U. S., at 500. It represents a "healthy concern that if the claim is brought by someone other than one at whom the constitutional protection is aimed," *Secretary of State of Md.* v. *Joseph H. Munson Co.*, 467 U. S. 947, 955, n. 5 (1984), the courts might be "called upon to decide abstract questions of wide public signifi-cance even though other governmental institutions may be

---

[2]To satisfy Article III, a party must demonstrate an "injury in fact"; a causal connection between the injury and the conduct of which the party complains; and that it is "likely" a favorable decision will provide redress. *Lujan* v. *Defenders of Wildlife*, 504 U. S. 555, 560–561 (1992) (internal quotation marks omitted). In this case, the attorneys alleged "injury in fact" flows from their contention that the Michigan system "has reduced the number of cases in which they could be appointed and paid as as-signed appellate counsel." App. 16a, ¶35 (Complaint). This harm, they allege, would be remedied by declaratory and injunctive relief aimed at the system. Again, we assume, without deciding, that these allegations are sufficient. See *Ruhrgas AG* v. *Marathon Oil Co.*, 526 U. S. 574, 585 (1999).

Opinion of the Court

more competent to address the questions and even though
judicial intervention may be unnecessary to protect indi-
vidual rights," *Warth* v. *Seldin, supra,* at 500.

We have not treated this rule as absolute, however,
recognizing that there may be circumstances where it is
necessary to grant a third party standing to assert the
rights of another. But we have limited this exception by
requiring that a party seeking third-party standing make
two additional showings. First, we have asked whether
the party asserting the right has a "close" relationship
with the person who possesses the right. *Powers* v. *Ohio,*
499 U. S. 400, 411 (1991). Second, we have considered
whether there is a "hindrance" to the possessor's ability to
protect his own interests. *Ibid.*

We have been quite forgiving with these criteria in
certain circumstances. "Within the context of the First
Amendment," for example, "the Court has enunciated
other concerns that justify a lessening of prudential limi-
tations on standing." *Secretary of State of Md.* v. *Joseph
H. Munson Co., supra,* at 956. And "[i]n several cases, this
Court has allowed standing to litigate the rights of third
parties when enforcement of the challenged restriction
*against the litigant* would result indirectly in the violation
of third parties' rights." *Warth* v. *Seldin, supra,* at 510
(emphasis added) (citing *Doe* v. *Bolton,* 410 U. S. 179
(1973); *Griswold* v. *Connecticut,* 381 U. S. 479 (1965);
*Barrows* v. *Jackson,* 346 U. S. 249 (1953)); see *Craig* v.
*Boren,* 429 U. S. 190 (1976). Beyond these examples—
none of which is implicated here—we have not looked
favorably upon third-party standing. See, *e.g., Conn* v.
*Gabbert,* 526 U. S. 286, 292–293 (1999) (rejecting an at-
torney's attempt to adjudicate the rights of a client). With
this in mind, we turn to apply our "close relationship" and
"hindrance" criteria to the facts before us.

The attorneys in this case invoke the attorney-client
relationship to demonstrate the requisite closeness. Spe-

Opinion of the Court

cifically, they rely on a future attorney-client relationship with as yet unascertained Michigan criminal defendants "who will request, but be denied, the appointment of appellate counsel, based on the operation" of the statute. App. 17a, ¶37 (Complaint). In two cases, we have recognized an attorney-client relationship as sufficient to confer third-party standing. See *Caplin & Drysdale, Chartered* v. *United States*, 491 U. S. 617 (1989); *Department of Labor* v. *Triplett*, 494 U. S. 715 (1990). In *Caplin & Drysdale, Chartered* v. *United States, supra,* we granted a law firm third-party standing to challenge a drug forfeiture statute by invoking the rights of an existing client. *Id.,* at 624, n. 3. This *existing* attorney-client relationship is, of course, quite distinct from the *hypothetical* attorney-client relationship posited here.

In *Department of Labor* v. *Triplett, supra,* we dealt with the Black Lung Benefits Act of 1972, which prohibited attorneys from accepting fees for representing claimants, unless such fees were approved by the appropriate agency or court. 30 U. S. C. §932(a) (1982 ed., Supp. V). An attorney, George Triplett, violated the Act and its implementing regulations by agreeing to represent claimants for 25% of any award obtained and then collecting those fees without the required approval. The state bar disciplined Triplett, and we allowed Triplett third-party standing to invoke the due process rights of the claimants to challenge the fee restriction that resulted in his punishment. 494 U. S., at 720–721. *Triplett* is different from this case on two levels. First, *Triplett* falls within that class of cases where we have "allowed standing to litigate the rights of third parties when enforcement of the challenged restriction *against the litigant* would result indirectly in the violation of third parties' rights." *Warth* v. *Seldin, supra,* at 510 (emphasis added). Second, and similar to *Caplin & Drysdale, Triplett* involved the representation of known claimants. The attorneys before us do

not have a "close relationship" with their alleged "clients";
indeed, they have no relationship at all.

We next consider whether the attorneys have demon-
strated that there is a "hindrance" to the indigents' ad-
vancing their own constitutional rights against the Michi-
gan scheme. *Powers* v. *Ohio, supra*, at 411. It is
uncontested that an indigent denied appellate counsel has
open avenues to argue that denial deprives him of his
constitutional rights. He may seek leave to challenge that
denial in the Michigan Court of Appeals and, if denied,
seek leave in the Michigan Supreme Court. See Mich.
Comp. Laws Ann. §770.3 (West Supp. 2004). He then may
seek a writ of certiorari in this Court. See 28 U. S. C.
§1257(a). Beyond that, there exists both state and federal
collateral review. See Mich. Rule Crim. Proc. 6.500 (2004);
28 U. S. C. §2254.

The attorneys argue that, without counsel, these avenues
are effectively foreclosed to indigents. They claim that
unsophisticated, *pro se* criminal defendants could not satisfy
the necessary procedural requirements, and, if they did,
they would be unable to coherently advance the substance of
their constitutional claim.

That hypothesis, however, was disproved in the Michi-
gan courts, see, *e.g., People* v. *Jackson*, 463 Mich. 949, 620
N. W. 2d 528 (2001) (*pro se* defendant sought leave to
appeal denial of appointment of appellate counsel to the
Michigan Court of Appeals and the Michigan Supreme
Court); *People* v. *Wilkins*, 463 Mich. 949, 620 N. W. 2d 528
(2001) (same), and this Court, see Pet. for Cert. in *Halbert*
v. *Michigan*, O. T. 2004, No. 03–10198 (pending request
for writ of certiorari by a *pro se* defendant challenging the
denial of appellate counsel). While we agree that an at-
torney would be valuable to a criminal defendant challeng-
ing the constitutionality of the scheme, we do not think
that the lack of an attorney here is the type of hindrance
necessary to allow another to assert the indigent defen-

Opinion of the Court

dants' rights. See *Powers* v. *Ohio, supra,* at 411.

We also are unpersuaded by the attorneys' "hindrance" argument on a more fundamental level. If an attorney is all that the indigents need to perfect their challenge in state court and beyond, one wonders why the attorneys asserting this §1983 action did not attend state court and assist them. We inquired into this question at oral argument but did not receive a satisfactory answer. See Tr. of Oral Arg. 28–29, 35–40. It is a fair inference that the attorneys and the three indigent plaintiffs that filed this §1983 action did not want to allow the state process to take its course. Rather, they wanted a federal court to short-circuit the State's adjudication of this constitutional question. That is precisely what they got.

"[F]ederal and state courts are complementary systems for administering justice in our Nation. Cooperation and comity, not competition and conflict, are essential to the federal design." *Ruhrgas AG* v. *Marathon Oil Co.,* 526 U. S., at 586. The doctrine of *Younger* v. *Harris,* 401 U. S. 37 (1971), reinforces our federal scheme by preventing a state criminal defendant from asserting ancillary challenges to ongoing state criminal procedures in federal court. *Id.,* at 54–55.

In this case, the three indigent criminal defendants who were originally plaintiffs in this §1983 action were appropriately dismissed under *Younger.* As the Court of Appeals unanimously recognized, they had ongoing state criminal proceedings and ample avenues to raise their constitutional challenge in those proceedings.[3] 333 F. 3d, at 690–691. There also was no extraordinary circum-

---

[3]The Court of Appeals suggested, however, that adverse Michigan precedent on the merits of the constitutional claim made any resort to the state courts futile and thus justified the attorneys' sally into federal court. 333 F. 3d, at 695. But forum-shopping of this kind is not a basis for third-party standing. See, *e.g., Caplin & Drysdale, Chartered* v. *United States,* 491 U. S. 617, 624, n. 3 (1989).

8                         KOWALSKI *v.* TESMER

                         Opinion of the Court

stance requiring federal intervention. *Ibid.* An unwillingness to allow the *Younger* principle to be thus circumvented is an additional reason to deny the attorneys third-party standing.[4]

In sum, we hold that the attorneys do not have third-party standing to assert the rights of Michigan indigent defendants denied appellate counsel. We agree with the dissenting opinion in the Court of Appeals that "it would be a short step from the . . . grant of third-party standing in this case to a holding that lawyers generally have third-party standing to bring in court the claims of future unascertained clients."[5] 333 F. 3d, at 709 (Rogers, J., concurring in part and dissenting in part).

The judgment of the Court of Appeals is therefore reversed, and the case is remanded for further proceedings consistent with this opinion.

                                              *It is so ordered.*

_____

[4]The mischief that resulted from allowing the attorneys to circumvent *Younger* is telling. By the time the Michigan Supreme Court had a chance to rule on even the prestatutory practice, see *People v. Bulger*, 462 Mich. 495, 614 N. W. 2d 103 (July 18, 2000) (holding the practice constitutional), the Federal District Court had ruled the prestatutory practice *and* the impending statute itself unconstitutional. *Tesmer v. Granholm*, 114 F. Supp. 2d 603, 622 (ED Mich., Mar. 31, 2000). It also had issued an injunction against all Michigan judges, instructing them to appoint counsel (regardless of what their own Supreme Court said). 114 F. Supp. 2d 622 (ED Mich., June 30, 2000). Thus, the Federal District Court effectively trumped the Michigan Supreme Court's ruling; caused unnecessary conflict between the federal and state courts; and caused confusion among Michigan judges attempting to implement these conflicting commands.

[5]As Judge Rogers explained, the lawyer would have to make a credible claim that a challenged regulation would affect his income to satisfy Article III; after that, however, the possibilities would be endless. 333 F. 3d, at 709. A medical malpractice attorney could assert an abstract, generalized challenge to tort reform statutes by asserting the rights of some hypothetical malpractice victim (or victims) who might sue. *Id.*, at 710. An attorney specializing in Social Security cases could challenge implementation of a new regulation by asserting the rights of some hypothetical claimant (or claimants). *Ibid.* And so on.

Cite as: 543 U. S. ____ (2004)     1

THOMAS, J., concurring

# SUPREME COURT OF THE UNITED STATES

No. 03–407

### JOHN F. KOWALSKI, JUDGE, 26TH JUDICIAL CIRCUIT COURT OF MICHIGAN, ET AL., PETITIONERS v. JOHN C. TESMER ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[December 13, 2004]

JUSTICE THOMAS, concurring.

That this case is even remotely close demonstrates that our third-party standing cases have gone far astray. We have granted third-party standing in a number of cases to litigants whose relationships with the directly affected individuals were, at best, remote. We have held, for instance, that beer vendors have standing to raise the rights of their prospective young male customers, see *Craig* v. *Boren*, 429 U. S. 190, 192–197 (1976); that criminal defendants have standing to raise the rights of jurors excluded from service, see *Powers* v. *Ohio*, 499 U. S. 400, 410–416 (1991); that sellers of mail-order contraceptives have standing to assert the rights of potential customers, see *Carey* v. *Population Services Int'l*, 431 U. S. 678, 682–684 (1977); that distributors of contraceptives to unmarried persons have standing to litigate the rights of the potential recipients, *Eisenstadt* v. *Baird*, 405 U. S. 438, 443–446 (1972); and that white sellers of land have standing to litigate the constitutional rights of potential black purchasers, see *Barrows* v. *Jackson*, 346 U. S. 249, 254–258 (1953). I agree with the Court that "[t]he attorneys before us do not have a 'close relationship' with their alleged 'clients'; indeed, they have no relationship at all." *Ante*, at 5–6. The Court of Appeals understandably could have thought otherwise,

KOWALSKI v. TESMER

THOMAS, J., concurring

given how generously our precedents have awarded third-party standing.

It is doubtful whether a party who has no personal constitutional right at stake in a case should ever be allowed to litigate the constitutional rights of others. Before *Truax* v. *Raich*, 239 U. S. 33, 38–39 (1915), and *Pierce* v. *Society of Sisters*, 268 U. S. 510, 535–536 (1925), this Court adhered to the rule that "[a] court will not listen to an objection made to the constitutionality of an act by a party whose rights it does not affect and who has therefore no interest in defeating it." *Clark* v. *Kansas City*, 176 U. S. 114, 118 (1900) (internal quotation marks omitted).* This made sense. Litigants who have no personal right at stake may have very different interests from the individuals whose rights they are raising. Moreover, absent a personal right, a litigant has no cause of action (or defense), and thus no right to relief. It may be too late in the day to return to this traditional view. But even assuming it makes sense to grant litigants third-party standing in at least some cases, it is more doubtful still whether third-party standing should sweep as broadly as our cases have held that it does.

Because the Court's opinion is a reasonable application of our precedents, I join it in full.

---

*See also *Tyler* v. *Judges of Court of Registration*, 179 U. S. 405, 406–407 (1900); *Davis & Farnum Mfg. Co.* v. *Los Angeles*, 189 U. S. 207, 220 (1903); *Owings* v. *Norwood's Lessee*, 5 Cranch 344, 348 (1809) (Marshall, C. J.); *In re Wellington*, 33 Mass. 87, 96 (1834) (Shaw, C. J.); *Barrows* v. *Jackson*, 346 U. S. 249, 264–266, and n. 6 (1953) (Vinson, C. J., dissenting).

Cite as: 543 U. S. ___ (2004)      1

GINSBURG, J., dissenting

# SUPREME COURT OF THE UNITED STATES

No. 03–407

## JOHN F. KOWALSKI, JUDGE, 26TH JUDICIAL CIRCUIT COURT OF MICHIGAN, ET AL., PETITIONERS v. JOHN C. TESMER ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[December 13, 2004]

JUSTICE GINSBURG, with whom JUSTICE STEVENS and JUSTICE SOUTER join, dissenting.

Plaintiffs-respondents Arthur M. Fitzgerald and Michael D. Vogler are Michigan attorneys who have routinely received appointments to represent defendants in state-court criminal appeals, including appeals from plea-based convictions. They assert third-party standing to challenge a state law limiting an indigent's right to counsel: As codified in Mich. Comp. Laws Ann. §770.3a(1) (West 2000), the challenged law prescribes that most indigents

> "who plea[d] guilty, guilty but mentally ill, or nolo contendere shall not have appellate counsel appointed for review of the defendant's conviction or sentence."

The attorneys before us emphasize that indigent defendants generally are unable to navigate the appellate process *pro se*. In view of that reality, the attorneys brought this action under 42 U. S. C. §1983, to advance indigent defendants' constitutional right to counsel's aid in pursuing appeals from plea-based convictions.

"Ordinarily," attorneys Fitzgerald and Vogler acknowledge, "one may not claim standing ... to vindicate the constitutional rights of [a] third party." *Barrows* v. *Jack-*

*son*, 346 U. S. 249, 255 (1953). The Court has recognized
exceptions to the general rule, however, when certain
circumstances combine: (1) "The litigant [has] suffered an
'injury in fact,' . . . giving him or her a 'sufficiently con-
crete interest' in the outcome of the issue in dispute"; (2)
"the litigant [has] a close relation to the third party"; and
(3) "there [exists] some hindrance to the third party's
ability to protect his or her own interests." *Powers* v.
*Ohio*, 499 U. S. 400, 411 (1991) (quoting *Singleton* v. *Wulff*,
428 U. S. 106, 112 (1976)). The first requirement is of a
different order than the second and third, for whether a
litigant meets the constitutional prescription of injury in
fact determines whether his suit is "a case or controversy
subject to a federal court's Art. III jurisdiction." *Ibid.* By
contrast, the close relation and hindrance criteria are "pru-
dential considerations," *Secretary of State of Md.* v. *Joseph
H. Munson Co.*, 467 U. S. 947, 955 (1984), "judge made
rule[s] . . . fashion[ed] for our own governance," *id.*, at 972
(STEVENS, J., concurring). Our precedent leaves scant
room for doubt that attorneys Fitzgerald and Vogler have
shown both injury in fact, and the requisite close relation
to indigent defendants who seek the assistance of counsel
to appeal from plea-based convictions. I conclude, as well,
that those attorneys have demonstrated a formidable
hindrance to the indigents' ability to proceed without the
aid of counsel.

As to injury in fact, attorneys Fitzgerald and Vogler
alleged in their complaint that Mich. Comp. Laws Ann.
§770.3a would cause them direct economic loss because it
will "reduc[e] the number of cases in which they could be
appointed and paid as assigned appellate counsel." App.
16a. This allegation is hardly debatable. The Michigan
system for assigning appellate attorneys to indigent de-
fendants operates on a strict rotation. With fewer cases to
be assigned under the new statute, the pace of the rotation
would slow, and Fitzgerald and Vogler, who are on the

rosters for assignment, would earn less for representation of indigent appellants than they earned in years prior to the cutback on state-funded appeals.[1]

In *Singleton* v. *Wulff*, 428 U. S. 106, two physicians challenged state restrictions imposed on funding for abortions. Eight Members of this Court determined that the physicians had adequately alleged concrete injury: "If the physicians prevail[ed] in their suit . . . they [would] then receive payment . . . . [and t]he State (and Federal Government) [would] be out of pocket by the amount of the payments." *Id.*, at 113; see *id.*, at 122–123 (Powell, J., concurring as to injury in fact). Inescapably, the same reasoning applies to attorneys Fitzgerald and Vogler. They have alleged their past, state-paid representation of indigent defendants in appeals from plea-based convictions, and their aim to continue such representation in the future. As in *Singleton*, they will suffer injury "concrete and particularized[,] . . . actual or imminent, not conjectural or hypothetical," *Friends of Earth, Inc.* v. *Laidlaw Environmental Services (TOC), Inc.*, 528 U. S. 167, 180 (2000), if Michigan's statute holds sway. See generally R. Fallon, D. Meltzer, & D. Shapiro, Hart and Wechsler's The Federal Courts and the Federal System 177–178, and n. 5 (5th ed. 2003).

Nor, under our precedent, should attorneys Fitzgerald and Vogler encounter a "close relation" shoal. Our prior decisions do not warrant the distinction between an "*existing*" relationship and a "*hypothetical*" relationship that the

_____

[1]True, in several cases in which third-party standing was upheld on the basis of economic injury, the law in question proscribed conduct in which the challenger sought to engage. See, *e.g.*, *Craig* v. *Boren*, 429 U. S. 190, 192–194 (1976) (beer vendor prohibited from selling 3.2% beer to males aged 18–21). Our decisions confirm, however, that a plaintiff's exposure to an enforcement action is not essential to an injury-in-fact determination. See *Singleton* v. *Wulff*, 428 U. S. 106 (1976); *Pierce* v. *Society of Sisters*, 268 U. S. 510 (1925).

4                                KOWALSKI v. TESMER

Court advances today. *Ante*, at 5. See, *e.g.*, *Carey* v. *Population Services Int'l*, 431 U. S. 678, 683 (1977) (corporate distributor of contraceptives could challenge state law limiting sale of its products, "not only in its own right but also on behalf of its *potential* customers" (emphasis added)); *Griswold* v. *Connecticut*, 381 U. S. 479, 481 (1965) (noting that in *Pierce* v. *Society of Sisters*, 268 U. S. 510 (1925), "the owners of private schools were entitled to assert the rights of *potential* pupils and their parents," and in *Barrows*, "a white defendant . . . was allowed to raise . . . the rights of *prospective* Negro purchasers" (emphases added)).

Without suggesting that the timing of a relationship is key, the Court's decisions have focused on the character of the relationship between the litigant and the rightholder. See *Munson*, 467 U. S., at 973 (STEVENS, J., concurring) (propriety of third-party standing depends on "the nature of the relationship"). *Singleton*, for example, acknowledged the significant bond between physician and patient. See 428 U. S., at 117 (plurality opinion) ("[T]he physician is uniquely qualified to litigate the constitutionality of the State's interference with, or discrimination against, [the abortion] decision.").[2]  Similarly, this Court has twice recognized, in the third-party standing context, that the attorney-client relationship is of "special consequence." See *Caplin & Drysdale, Chartered* v. *United States*, 491 U. S. 617, 623–624, n. 3 (1989); *Department of Labor* v. *Triplett*, 494 U. S. 715, 720 (1990).[3]  Moreover, the Court has found an adequate "relation" between litigants alleg-

---

[2]There can be little doubt that the plurality in *Singleton* would have recognized third-party standing even if the physicians had just opened their clinic at the time they commenced suit.

[3]*Conn* v. *Gabbert*, 526 U. S. 286 (1999), see *ante*, at 4, is not instructive. There, the plaintiff-attorney failed to assert his own injury in fact, 526 U. S., at 289–292, and thus, *a fortiori*, could not assert third-party standing, *id.*, at 292–293.

GINSBURG, J., dissenting

ing third-party standing and those whose rights they seek
to assert when nothing more than a buyer-seller connec-
tion was at stake. See *Carey*, 431 U. S., at 683; *Craig* v.
*Boren*, 429 U. S. 190, 195 (1976).

Thus, as I see it, this case turns on the last of the three
third-party standing inquiries, here, the existence of an
impediment to the indigent defendants' effective assertion
of their own rights through litigation. I note first that the
Court has approached this requirement with a degree of
elasticity. See *id.*, at 216 (Burger, C. J., dissenting) (males
between the ages of 18 and 21 who sought to purchase
3.2% beer faced no serious obstacle to asserting their own
rights). The hindrance faced by a rightholder need only be
"genuine," not "insurmountable." *Singleton*, 428 U. S., at
116–117 (plurality opinion); see also *Munson*, 467 U. S., at
956 ("Where practical obstacles prevent a party from
asserting rights on behalf of itself . . . the Court has recog-
nized [third-party standing]."). Even assuming a require-
ment with more starch than the Court has insisted upon
in prior decisions, this case satisfies the "impediment"
test.

To determine whether the indigent defendants are
impeded from asserting their own rights, one must recog-
nize the incapacities under which these defendants labor
and the complexity of the issues their cases may entail.
According to the Department of Justice, approximately
eight out of ten state felony defendants use court-
appointed lawyers. U. S. Dept. of Justice, Bureau of
Justice Statistics, C. Harlow, Defense Counsel in
Criminal Cases 1, 5 (Nov. 2000), available at
http://www.ojp.usdoj.gov/bjs/pub/pdf/dccc.pdf (all Internet
materials as visited Dec. 8, 2004, and available in Clerk of
Court's case file). Approximately 70% of indigent defen-
dants represented by appointed counsel plead guilty, and
70% of those convicted are incarcerated. *Id.*, at 6, (Tables
10–11). It is likely that many of these indigent defen-

KOWALSKI *v.* TESMER

dants, in common with 68% of the state prison population, did not complete high school, U. S. Dept. of Justice, Bureau of Justice Statistics, C. Harlow, Education and Correctional Populations 1 (Jan. 2003), available at http://www.ojp.usdoj.gov/bjs/pub/pdf/ecp.pdf, and many lack the most basic literacy skills, U. S. Dept. of Ed., National Center for Education Statistics, Literacy Behind Prison Walls xviii, 10, 17 (Oct. 1994) (NCES 1994–102), available at http://nces.ed.gov/pubs94/94102.pdf. A Department of Education study found that about seven out of ten inmates fall in the lowest two out of five levels of literacy—marked by an inability to do such basic tasks as write a brief letter to explain an error on a credit card bill, use a bus schedule, or state in writing an argument made in a lengthy newspaper article. *Id.,* at 10, app. A (Interpreting the Literacy Scales). An inmate so handicapped surely does not possess the skill necessary to pursue a competent *pro se* appeal.

These indigent and poorly educated defendants face appeals from guilty pleas often no less complex than other appeals. An indigent defendant who pleads guilty may still raise on appeal

> "constitutional defects that are irrelevant to his factual guilt, double jeopardy claims requiring no further factual record, jurisdictional defects, challenges to the sufficiency of the evidence at the preliminary examination, preserved entrapment claims, mental competency claims, factual basis claims, claims that the state had no right to proceed in the first place, including claims that a defendant was charged under an inapplicable statute, and claims of ineffective assistance of counsel." *People* v. *Bulger,* 462 Mich. 495, 561, 614 N. W. 2d 103, 133–134 (2000) (Cavanagh, J., dissenting) (citations omitted).

The indigent defendant pursuing his own appeal must

also navigate Michigan's procedures for seeking leave to appeal after sentencing on a guilty plea. Michigan's stated Rule requires a defendant to file an application for appeal within 21 days after entry of the judgment. Mich. Rule App. Proc. 7.205(A) (2004). The defendant must submit five copies of the application "stating the date and nature of the judgment or order appealed from; concisely reciting the appellant's allegations of error and the relief sought; [and] setting forth a concise argument . . . in support of the appellant's position on each issue." Rule 7.205(B)(1). The State Court Administrative Office has furnished a three-page form application accompanied by two pages of instructions for defendants seeking leave to appeal after sentencing on a guilty plea. But this form is unlikely to provide adequate aid to an indigent and poorly educated defendant. The form requires entry of such information as "charge code(s), MCL citation/PACC Code," asks the applicant to state the issues and facts relevant to the appeal, and then requires the applicant to "state the law that supports your position and explain how the law applies to the facts of your case." Application for Leave to Appeal After Sentencing on Plea of Guilty or Nolo Contendere, http://courts.michigan.gov/scao/courtforms/appeals/cc405.pdf (rev. Oct. 2003). This last task would not be onerous for an applicant familiar with law school examinations, but it is a tall order for a defendant of marginal literacy.[4]

The Court, agreeing with Judge Rogers' dissent from the en banc Sixth Circuit decision, writes that recognizing third-party standing here would allow lawyers generally

---

[4]The rare case of an unusually effective *pro se* defendant is the exception that proves the rule: The Court identifies three Michigan defendants who pursued right-to-counsel claims *pro se*. *Ante*, at 6. The fact that a handful of *pro se* defendants has brought claims shows neither that the run-of-the-mine defendant can successfully navigate state procedures nor that he can effectively represent himself on the merits.

8                         KOWALSKI *v.* TESMER

GINSBURG, J., dissenting

to assert standing to champion their potential clients'
rights. *Ante,* at 8, n. 5. For example, a medical malprac-
tice attorney could challenge a tort reform statute on
behalf of a future client or a Social Security lawyer could
challenge new regulations. *Ibid.; Tesmer* v. *Granholm,*
333 F. 3d 683, 709–710 (CA6 2003) (en banc). In such
cases, however, in marked contrast to the instant case, the
persons directly affected—malpractice plaintiffs or bene-
fits claimants—would face no unusual obstacle in securing
the aid of counsel to attack the disadvantageous statutory
or regulatory change. There is no cause, therefore, to
allow an attorney to challenge the benefit- or award-
reducing provision in a suit brought in the attorney's
name. The party whose interests the provision directly
impacts can instead mount the challenge with the aid of
counsel.

This case is "unusual because it is the deprivation of
counsel itself that prevents indigent defendants from
protecting their right to counsel." Brief for National Asso-
ciation of Criminal Defense Lawyers et al. as *Amici Curiae*
17. The challenged statute leaves indigent criminal de-
fendants without the aid needed to gain access to the
appellate forum and thus without a viable means to pro-
tect their rights. Cf. *Evitts* v. *Lucey,* 469 U. S. 387, 393
(1985) ("[T]he services of a lawyer will for virtually every
layman be necessary to present an appeal in a form suitable
for appellate consideration on the merits.").

The Court is "unpersuaded by the attorneys' 'hindrance'
argument," *ante,* at 7, in the main, because it sees a clear
path for Fitzgerald and Vogler: They could have "at-
tend[ed] state court and assist[ed] [indigent defendants.]"
*Ibid.* Had the attorneys taken this course, hundreds,
perhaps thousands, of criminal defendants would have
gone uncounseled while the attorneys afforded assistance
to a few individuals. In order to protect the rights of *all*
indigent defendants, the attorneys sought prospective

GINSBURG, J., dissenting

classwide relief to prevent the statute from taking effect. See Tr. of Oral Arg. 41 ("The problem was we had to file this litigation before the statute went into effect because once the statute went into effect, thousands of Michigan indigents would be denied the right to counsel every year and would suffer probably irreparable damage to their right to appeal.").

This case implicates none of the concerns underlying the Court's prudential criteria. The general prohibition against third-party standing "'frees the Court not only from unnecessary pronouncement on constitutional issues, but also from premature interpretations of statutes in areas where their constitutional application might be cloudy,' and it assures the court that the issues before it will be concrete and sharply presented." *Munson*, 467 U. S., at 955 (citation omitted) (quoting *United States* v. *Raines*, 362 U. S. 17, 22 (1960)). Attorneys Fitzgerald and Vogler have "properly . . . frame[d] the issues and present[ed] them with the necessary adversarial zeal," 467 U. S., at 956, and whether the indigent defendants whose rights they assert are entitled to counsel is a question fully ripe for resolution.[5]

The Court concludes that the principle of *Younger* v. *Harris*, 401 U. S. 37 (1971), "is an additional reason to deny the attorneys third-party standing." *Ante*, at 8. Whether a federal court should abstain under *Younger* is, of course, distinct from whether a party has standing to sue. See 401 U. S., at 41–42 (dismissing three appellees on standing grounds before addressing the abstention question). *Younger* "[has] little force in the absence of a pending state proceeding." *Steffel* v. *Thompson*, 415 U. S. 452, 462 (1974) (quoting *Lake Carriers' Assn.* v. *MacMullan*, 406 U. S. 498, 509 (1972)). "When no state criminal

---

[5] Considerations of economy—the parties have fully briefed and argued this case—also favor reaching the merits.

GINSBURG, J., dissenting

proceeding is pending at the time the federal complaint is
filed, federal intervention does not result in duplicative
legal proceedings or disruption of the state criminal justice
system; nor can federal intervention, in that circumstance,
be interpreted as reflecting negatively upon the state
court's ability to enforce constitutional principles." 415
U. S., at 462; accord *Doran* v. *Salem Inn, Inc.*, 422 U. S.
922, 930 (1975). Attorneys Fitzgerald and Vogler filed this
suit before the Michigan statute took effect. At that time,
*no* state criminal proceeding governed by the statute
existed with which this suit could interfere.[6]

In sum, this case presents an unusual if not unique case
of defendants facing near-insurmountable practical obsta-
cles to protecting their rights in the state forum: First, it is
the deprivation of counsel itself that prevents indigent
defendants, many of whom are likely to be unsophisticated
and poorly educated, from protecting their rights; second,
the substantive issues that such defendants could raise in
an appeal are myriad and often complicated; and third,
the procedural requirements for an appeal after a guilty
plea are not altogether indigent-user friendly. The expo-
sure of impecunious defendants to these access-to-appeal
blockages in state court makes the need for this suit all
the more compelling.

\*     \*     \*

For the reasons stated, I would affirm the en banc Sixth
Circuit decision that attorneys Fitzgerald and Vogler have
standing to maintain the instant action and would proceed
to the merits of the controversy.

_____

[6] I agree with the Court that *Younger* would force the *indigent defen-
dants* to pursue their claims in state court, as *Younger* has a stricter
impediment requirement than the third-party standing doctrine. *Younger*
v. *Harris*, 401 U. S. 37, 53 (1971) (requiring "extraordinary circumstances"
before allowing federal intervention).

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT
100 EAST FIFTH STREET, ROOM 532
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO  45202-3988

LEONARD GREEN
CLERK

TELEPHONE
(513) 564-7000
www.ca6.uscourts.gov


TO:   JUDGE BOGGS, Chief Judge; JUDGES MARTIN, NORRIS, SILER, BATCHELDER, DAUGHTREY, MOORE, COLE, CLAY, GILMAN, GIBBONS, and ROGERS

FROM:  Suzanne Hogan

DATE:  December 16, 2004

RE:   Case No. 00-1824/1845
      Tesmer v. Granholm


Argued:  December 11, 2002

         Chief Judge Boggs, Judges Martin, Norris, Siler, Batchelder,
         Daughtrey, Moore, Cole, Clay, Gilman, Gibbons, and Rogers

Opinion Filed:  June 17, 2003

Authoring Judge: Judge Martin

Enclosed please find:  Supreme Court Opinion
                       Filed 12-13-04


cc: Honorable David M. Lawson
    Honorable Victoria A. Roberts
    Mr. David J. Weaver, Clerk
    District Court No. 10082